IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| RONALD SPEAR-ZULETA | Case No. 3:23CV1538 (JCH) |
| v. | January 25, 2024 |
| UNITED STATES OF AMERICA | |

## GOVERNMENT'S OPPOSITION TO PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE

Petitioner and defendant Ronald Spear-Zuleta now moves *pro se* to vacate, set aside, or correct his sentence.  Spear-Zuleta argues that his counsel, Attorneys Robert G. Golger and Anthony D. Collins, provided ineffective representation and presses four claims: (1) exculpatory evidence was withheld from him by counsel; (2) counsel failed to investigate potential avenues for impeachment or properly cross-examine witnesses (presumably at the *Fatico* hearing); (3) counsel failed to inform the defendant of his sentencing exposure ( *"points of enhancements."*), and (4) counsel failed to "assert/object to unfair hearings." Def's Motion at 4-9. Contrary to his sworn statements at the change of plea, he now claims for the first time that his guilty plea was "coerced by counsel." *Id*. at 8. The petitioner's claims are meritless, and his motion for relief pursuant to 28 U.S.C. § 2255 should be denied without need for a hearing.

### I.    Procedural Background

After Spear-Zuleta orchestrated the brazen kidnapping and robbery of Ashley Branham to recoup a drug debt from her fiancé Alan Robinson[1], he and codefendants Aninha Spear-Zuleta and Martiza Torres, were charged by Second Superseding Indictment with violations of 18

---

[1] Branham reported the robbery to law enforcement after Robinson was shot and killed in 2018 near the Spear-Zuleta residence in Woodbridge, Connecticut.  *See* CM/ECF 3:18CR311, Doc. No. 274 (*Fatico* hearing transcript).

U.S.C. §§ 1951 & 2 (interference with commerce by robbery), §§ 1201(a)(1) & 2 (kidnapping) (2 counts), and § 371 (conspiracy). CM/ECF 3:18CR311, Doc. No. 59. On September 11, 2019, Spear-Zuleta pleaded guilty, pursuant to a written plea agreement, to Count One of the Second Superseding Indictment, violation of 18 U.S.C. § 1951 (interference with commerce by robbery). CM/ECF 3:18CR311, Doc. No. 172 (plea agreement). *See also* CM/ECF 3:18CR311, Doc. No. 202 (change of plea transcript). In his written plea agreement, Spear-Zuleta waived his right to appeal or collaterally attack his conviction, including by motion under 28 U.S.C. § 2255, but the waiver did not preclude a claim of ineffective assistance of counsel. CM/ECF 3:18CR311, Doc. No. 172 (plea agreement) at 6.

Spear-Zuleta was represented by Attorney Robert G. Golger from the inception of the case until February 19, 2020 (after the change of plea, but before sentencing). Attorney Golger filed a motion to withdraw (at Spear-Zuleta's request), which was granted by the Court. CM/ECF 3:18CR311, Doc. Nos. 210, 214.  Attorney Anthony D. Collins was then appointed to represent Spear-Zuleta and did so through sentencing. CM/ECF 3:18CR311, Doc. No. 215.

Spear-Zuleta, in 2020, filed motions to withdraw his guilty plea. CM/ECF 3:18CR311, Doc. Nos. 199, 230, 253. Without asserting actual innocence, Spear-Zuleta sought to take back his plea arguing: (1) there was an insufficient factual basis for the plea, (2) the district court did not ensure he understood the nature of the charge, and (3) there was late disclosure of impeachment evidence related to Ashley Branham, a witness who would be called at an upcoming *Fatico* hearing. The Court twice denied Spear-Zuleta's motions and found there was no basis for withdrawal of the guilty plea. CM/ECF 3:18CR311, Doc. Nos. 239, 256. The Court further found that any potential impact of the late-disclosed impeachment material (*i.e.*,

participation in the Connecticut Witness Protection Program) was "very likely minimal." CM/ECF 3:18CR311, Doc. No. 256 at 8.

On February 23, 2021, the Court held a contested *Fatico* hearing to make factual determinations in advance of sentencing. CM/ECF 3:18CR311, Doc. No. 272. *See also* CM/ECF 3:18CR311, Doc. No. 274 (*Fatico* hearing transcript). On April 21, 2021, the Court sentenced Spear-Zuleta to a term of imprisonment of 135 months, and three years of supervised release. CM/ECF 3:18CR311, Doc. No. 340 (judgment). *See also* CM/ECF 3:18CR311, Doc. No. 352 (sentencing hearing transcript). On May 3, 2021, Spear-Zuleta filed a notice of appeal. CM/ECF 3:18CR311, Doc. No. 347.

On November 22, 2021, Spear-Zuleta, represented by Attorney James Glasser, appealed his plea and sentence to the Second Circuit Court of Appeals. 21-1158, Doc. No. 33. Spear-Zuleta asked that his conviction be vacated claiming that: (1) there was an insufficient factual basis for the plea, (2) the district court did not ensure he understood the nature of the charge, (3) late disclosure of impeachment evidence prevented him from entering a knowing and voluntary plea, and (4) that the district court erred in applying a one-level sentencing enhancement pursuant to § 2B3.1(b)(6)(A) (theft of a controlled substance). *Id*. By summary order, the Second Circuit found Spear-Zuleta's claims to be without merit and affirmed his conviction. *United States v. Spear-Zuleta*, 2022 WL 17347243 (2d Cir. 2022); 21-1158, Doc. No. 84. The mandate was issued on December 22, 2022. 21-1158, Doc. No. 86. Spear-Zuleta did not file a petition for certiorari with the United States Supreme Court. Def's Mot. at 3.

The defendant's instant motion, pursuant to 28 U.S.C. § 2255, was filed on November 17, 2023. CM/ECF 3:23CV1538, Doc. No. 1.

## II.     Law

Federal prisoners can challenge a criminal sentence pursuant to 28 U.S.C. § 2255 "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." *Graziano v. United States*, 83 F.3d 587, 590 (2d Cir. 1996) (internal citation and quotation marks omitted). A petitioner may obtain review of his claims if he has raised them at trial or on direct appeal; if he has not, such a procedural default can be overcome by a showing of "cause" and "prejudice", *Ciak v. United States*, 59 F.3d 296, 302 (2d Cir. 1995) *abrogated on other grounds by Mickens v. Taylor*, 535 U.S. 162 (2002) (*quoting Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)), or a showing of constitutionally ineffective assistance of counsel, *see Johnson v. United States*, 313 F.3d 815, 817 (2d Cir. 2002); *Murray v. Carrier*, 477 U.S. 478, 487-88 (1986).

Section 2255 provides that a district court should grant a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). However, "[t]he language of the statute does not strip the district courts of all discretion to exercise their common sense." *Machibroda v. United States*, 368 U.S. 487, 495 (1962). In making its determination regarding the necessity for a hearing, a district court may draw upon its personal knowledge and recollection of the case. *See Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1997); *United States v. Aiello*, 900 F.2d 528, 534 (2d Cir. 1990). Thus, a § 2255 petition, or any part of it, may be dismissed without a hearing if, after a review of the record, the court determines that the motion is without merit because the allegations are insufficient as a matter of law.

> To prevail on an ineffective assistance of counsel claim, the petitioner must show, first, that his "counsel's representation fell below an objective standard of reasonableness" and, second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). To satisfy the first, or "performance," prong, the defendant must show that counsel's performance was "outside the wide range of professionally competent assistance," [*Strickland*, 466 U.S.] at 690, and to satisfy the second, or "prejudice," prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id*. at 694 . . . .

*Brown v. Artuz*, 124 F.3d 73, 79-80 (2d Cir. 1997). In this context, "there is no relevant difference between an [attorney's] act of commission and an act of omission." *Padilla v. Kentucky*, 559 U.S. 356, 370 (2010) (citation and internal quotation marks omitted). Rather, "[t]he court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (citation and internal quotation marks omitted). "That requires a substantial, not just conceivable, likelihood of a different result." *Id*. (citation and internal quotation marks omitted). To satisfy the prejudice element of the *Strickland* test, a petitioner "must make more than a bare allegation" of prejudice. *United States v. Horne*, 987 F.2d 833, 836 (D.C. Cir. 1993). "The court 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that '[t]here are countless ways to provide effective assistance in any given case' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990) (quoting *Strickland*, 466 U.S. at 689). Courts should not second-guess the decisions made by defense counsel on tactical and strategic matters. *See United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998). "The court's central concern is not with 'grad[ing] counsel's performance,' but with discerning 'whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the

adversarial process that our system counts on to produce just results[.]'" *Aguirre*, 912 F.2d at 561 (quoting *Strickland*, 466 U.S. at 696-67) (internal citations omitted)).

A petitioner who was convicted after pleading guilty faces an additional burden. First, he is barred from raising any claims for relief based on his attorney's performance prior to the entry of the plea, except insofar as it relates to the voluntary and intelligent character of the plea. *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985). *See also Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to deprivation of constitutional rights that occurred prior to the entry of a guilty plea"); *accord Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008); *United States v. Garcia*, 339 F.3d 116, 117 (2d Cir. 2003). Second, a defendant's statements at a plea proceeding admitting all the elements of the charge to which he is pleading guilty "carry a strong presumption of verity." *United States v. Maher*, 108 F.3d 1513, 1530 (2d Cir. 1997) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Likewise, where a defendant "has explicitly stated in his allocution that he fully understands the consequences of his plea and that he has chosen to plead guilty after a thorough consultation with his attorney, a district court on *habeas* review may rely on the defendant's sworn statements and hold him to them." *Padilla v. Keane*, 331 F.Supp.2d 209, 217 (S.D.N.Y. 2004) (citing *Blackledge*, 431 U.S. at 74 ("[T]he representations of the defendant at [a plea colloquy] ... constitute a formidable barrier in any subsequent collateral proceedings"). *See also United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997) ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea").

## III.    Argument

Spear-Zuleta claims that he received ineffective assistance of counsel because defense

counsel "withheld exculpatory evidence 'USB Drive,' until months after guilty plea"; failed to "investigate all impeachment/credibility evidence [and] failed to cross examine properly"; failed to inform the defendant of his "true sentencing exposure - 11 points of enhancements," and; failed to "assert/object to unfair hearings." Def's Motion at 4-9. He further asserts that his guilty plea was involuntary where it was "coerced by counsel." Def's Motion at 8.

Spear-Zuleta concedes that he did not raise any of the five grounds he now advances any an earlier stage or on appeal, because he was "focus[ed] on the issues that were before the court." *See* Def's Mot at 5-9. Other than brief conclusory claims, he provides no underlying factual basis in support of his motion.

As discussed below, his claims are without merit.

### a.   *"Exculpatory evidence"*

Spear-Zuleta's claim that counsel was ineffective by "with[holding]" a USB drive containing "exculpatory evidence" until "months after the guilty plea" is insufficient as a matter of law and lacks a sufficient factual basis.

Spear-Zuleta does not describe the contents of the "USB Drive," the manner in which it was "withheld," or whether it was withheld by Attorney Golger or Collins. Because Spear-Zuleta does not describe the purported exculpatory evidence with any specificity, the Government presumes that he is pointing to late-disclosed impeachment information about the participation by Ashley Branham in the Connecticut witness protection program (a topic covered both in a motion to withdraw his guilty plea and his appeal to vacate his conviction). *See* CM/ECF 3:18CR311, Doc. No. 253; *Spear-Zuleta*, 2022 WL 17347243. Spear-Zuleta pleaded guilty on September 11, 2019, and the Government admittedly (though inadvertently) failed to timely provide that information, as ordered by the Court, until more than one year after the guilty plea. *See* CM/ECF

3:18CR118, Doc. No. 256 (ruling on second motion to withdraw guilty plea) at 2-3. This information was the basis for Spear-Zuleta's second motion to withdraw his guilty plea, CM/ECF 3:18CR118, Doc. No. 253 (second motion to withdraw guilty plea), which this Court denied. CM/ECF 3:18CR118, Doc. No. 256 (ruling on second motion to withdraw guilty plea). Spear-Zuleta also unsuccessfully argued to the Second Circuit that this Court's decision denying his second motion to withdraw his guilty plea was in error. *Spear-Zuleta*, 2022 WL 17347243, at *5.

First, Spear-Zuleta cannot demonstrate any prejudice. The information (*i.e.*, receipt of payment and housing), along with other impeachment information, was used by Attorney Collins to impeach Branham at the *Fatico* hearing. *See* CM/ECF 3:18CR118, Doc. No. 274 (*Fatico* hearing transcript) at 54-55. Next, as the Second Circuit discussed when Spear-Zuleta claimed this Court erred in denying his second motion to withdraw his guilty plea, "The Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant. … [I]mpeachment information is special in relation to the fairness of a trial, not in respect to whether a plea was voluntary ('knowing,' 'intelligent,' and 'sufficient[ly] aware'.). *Spear-Zuleta*, 2022 WL 17347243, at *5. But even if the information could have served as a basis for withdrawal of the guilty plea (and where this Court had ordered disclosure of any such information), the Second Circuit found that the "district court correctly determined that the information at issue here … was immaterial." *Id*. As this Court held and the Second Circuit affirmed, Branham's participation in the witness protection program was not material to Spear-Zuleta's decision to plead guilty. *See id*. *See also* CM/ECF 3:18CR118, Doc. No. 256 (ruling) at 8 ("The court concludes that the potential impact of the information … is very likely minimal"). He fails to satisfy the *Strickland* prejudice prong where the immateriality of the information demonstrates that, even with knowledge of the Branham information, the result of the

proceeding would not have been different.

Nor can Spear-Zuleta satisfy the *Strickland* performance prong. Attorney Collins was not notified of the Branham information until a telephonic status conference on October 27, 2020. CM/ECF 3:18CR118, Doc. No. 256 (ruling on second motion to withdraw guilty plea) at 2-3. That information then quickly became the basis for Spear-Zuleta's second motion to withdraw the guilty plea, dated November 30, 2021. CM/ECF 3:18CR118, Doc. No. 253 (second motion to withdraw guilty plea). The information was used by Attorney Collins during his cross-examination of Branham at the *Fatico* hearing. CM/ECF 3:18CR118, Doc. No. 274 (*Fatico* hearing transcript) at 54-55. Nothing about the performance of Attorney Collins (or Attorney Golger) with respect to the Branham information falls outside of the rage of professionally competent assistance.

Spear-Zuleta's claim related to "withheld exculpatory evidence" fails the *Strickland* test.

### b. *Impeachment and cross-examination*

Spear-Zuleta's claim that counsel (here, presumably, Attorney Collins) was ineffective by failing to "investigate all impeachment/credibility evidence … [or to properly] cross examine" is also insufficient as a matter of law and lacks a sufficient factual basis.

On February 23, 2021, the Court held a contested *Fatico* hearing to address various sentence-related objections made by the defendant, and to put the Government to its burden of proving any enhancements to the Sentencing Guidelines (or relevant conduct) by a preponderance of the evidence. CM/ECF 3:18CR311, Doc. No. 274 (*Fatico* hearing transcript). The Government called one witness, Ashley Branham, *id.*, at 8-54, who Attorney Collins then cross-examined at length. *Id.* at 54-80. Attorney Collins also called one witness, a Milford Police Officer who had interacted with Branham at her home during the robbery. *Id.*, at 81-87. Attorney Collins effectively cross-examined Branham on a number of areas to attack her credibility, and presented evidence

including:

> • Branham's concession that when the police arrived at the townhouse during the robbery, she denied a robbery and instead told a story that she was emptying the location of Robinson's belongings. *Id.* at 64-66.

> • Branham did not report the robbery for several months, until after Robinson's murder. *Id.* at 53-54.

> • Branham's admission that she lied to "state police investigators" when she first met with them after Robinson's murder. *Id.* at 69-70.

> • Branham's attachment to Robinson and that the two became engaged the month after the robbery. *Id.* at 56.

> • Neither Spear-Zuleta's children nor his mother-in-law came down to the Spear-Zuleta basement to investigate the on-going assault. *Id.* at 62.

> • Inconsistencies, highlighted by Attorney Collins, between Branham's testimony at the hearing and the information she provided during an interview with law enforcement in April 2018, as to whether Branham went to her mother's house after the robbery. *Id.* at 66-67.

> • Use by Attorney Collins of a video recording of the April 2018 interview to indicate that law enforcement were "suggest[ing]" answers to Branham, and that Branham initially told the officers that she went to her townhouse with Aninha, Torres, and the unidentified male of her own free will. *Id.* at 72-73. *See also* JA291 ("In addition, in terms of her discussing the case with the agents in the interview, at one point when they asked her about her decision to go back to her home, she let it slip that it was of her own free will.").

> • Testimony by a Milford police officer who responded to the townhouse during the robbery who did not "see any physical marks" on Branham, *id.* at 85, after Branham had testified that Spear-Zuleta's assault resulted in "scratches" on her right hand, a "gash" on her face, and a "scar" on her leg. *Id.* at 61.

> • Testimony by the Milford police officer that Branham never reported a robbery and merely said that she was breaking up with her boyfriend. *Id.* at 85.

At the sentencing hearing, Collins further attacked Branham's credibility. *See* CM/ECF 3:18CR311, Doc. No. 274 (Sentencing hearing transcript).

  Spear-Zuleta's argument fails where the record clearly shows that Attorney Collins's cross-examination vigorously attacked Branham's credibility, and where she was impeached using various methods – including inconsistencies between her testimony and prior recorded statements,

and use of the testimony of a Milford Police Officer. Moreover, Spear-Zuleta knew Branham for nearly a decade (Since she was 13-years old, Branham had known Aninha Spear-Zuleta and was godmother to her children) and was well-situated to confer with counsel regarding potential areas of impeachment or avenues to attack her credibility. *See* CM/ECF 3:18CR311, Doc. No. 274 (*Fatico* hearing transcript) at 10, 55-57. Spear-Zuleta fails to say what missed the mark, he does not say where the investigation of Branham (a person closely known to him) fell short, or the specific avenues of cross-examination that needed to be explored.

To be sure, Spear-Zuleta has never advanced a claim of actual innocence. The purpose for the cross-examination of Branham at the *Fatico* hearing was to contest potentially applicable enhancements in the Sentencing Guidelines (*i.e.*, threat of death pursuant to U.S.S.G. § 2B3.1(b)(2)(F), abduction to facilitate the crime pursuant to § 2B3.1(b)(4)(A), theft of a firearm and controlled substances pursuant to § 2B3.1(b)(6)(A), and harm against a vulnerable victim, pursuant to §3A1.1(b)(1)). Attorney Collins did just that by testing Branham's general credibility, probing whether she was abducted or if threats were made to her, questioning her knowledge and ability to perceive the theft of a gun or controlled substances, and exploring the circumstances around vulnerable "Mr. Mike." *See* CM/ECF 3:18CR311, Doc. No. 274 (*Fatico* hearing transcript) at 54-80.

Spear-Zuleta fails to demonstrate that the performance of Attorney Collins by way of cross-examination and impeachment of Branham at the *Fatico* hearing was deficient, nor does he demonstrate that any prejudice resulted.

### c. *Sentencing exposure*

Spear-Zuleta argues that counsel (here, presumably, Attorney Golger at the change of plea) was ineffective because he was not "informed" of his "true sentencing exposure," "11 points of

enhancements." Def's Mot. at 7. His argument fails where he was plainly aware that his plea to Count One of the Second Superseding Indictment carried a maximum penalty of 20 years' imprisonment. 3:18CR311, Doc. No. 172 (plea agreement). *See also* 3:18CR311, Doc. No. 202 (change of plea transcript). At his sentencing, the Court made factual determinations, applied the Sentencing Guidelines to determine the advisory sentencing range[2], considered the sentencing factors under 18 U.S.C. § 3553, and imposed upon Spear-Zuleta a sentence of 135 months' imprisonment. *See* 3:18CR311, Doc. No. 352 (sentencing hearing transcript) at 137.

At his change of plea on September 11, 2019, Spear-Zuleta pleaded guilty to Count One of the Second Superseding Indictment, violation of 18 U.S.C. § 1951 (interference with commerce by robbery). Spear-Zuleta, with Attorney Golger, executed the plea agreement which set forth his sentencing exposure: "This offense carries a maximum penalty of 20 years of imprisonment." 3:18CR311, Doc. No. 172 (plea agreement) at 2.

During his change of plea, this Court carefully questioned Spear-Zuleta to confirm that he was competent and capable of entering into the plea, that he acted voluntarily, knowingly, and of his own free will, that he understood his rights, and that his guilty plea was supported by a basis in fact containing each of the elements in the offense charged. *See* 3:18CR311, Doc. No. 352 (sentencing hearing transcript) at 50. Spear-Zuleta was given ample opportunity to confer with counsel, *see id.* at 3, 34-35, as well as individuals in the audience. *Id.* at 39-40. The Court plainly ensured that Spear-Zuleta understood his sentencing exposure:

---

[2] The base offense level for the offense was 20. *See* 3:18CR311, Doc. No. 329 (Second revised PSR). The Court applied a two level enhancement pursuant to U.S.S.G. § 2B3.1(b)(2)(F) (threat of death), a four level enhancement pursuant to § 2B3.1(b)(4)(A) (abduction), a one level enhancement pursuant to § 2B3.1(b)(6)(A) (theft of a controlled substance), a two level enhancement pursuant to § 3B1.1(c) (role), and a two level reduction pursuant to § 3E1.1(a) (acceptance of responsibility), resulting in a total offense level 27. *Id*. While Spear-Zuleta was a Criminal History Category VI, the Court granted a *Fernandez* departure to a CHC V. 3:18CR311, Doc. No. 100 (sentencing hearing transcript) at 99-100. The resulting Sentencing Guidelines Range was 120 to 150 months' imprisonment. *Id*. *See also* 3:18CR311, Doc. No. 329 (second revised PSR).

| The Court: | Ok. And do you understand that if you're convicted of that count or if you chose to plead guilty today and a conviction follows by that plea or by trial, that you face a maximum penalty of up to 20 years of imprisonment? |
|---|---|
| The Defendant: | Yes. |

*Id*. at 7. Spear-Zuleta confirmed that he had enough time to confer with counsel about the case and the plea agreement, and that he was satisfied with Attorney Golger's representation, services, and advice. *Id*. at 9-10. The Court inquired directly of Attorney Golger:

| The Court: | And did you advise him of the same maximum penalties that he faces if he does change his plea that I did a minute ago? |
|---|---|
| Mr. Golger: | Yes. |
| The Court: | Okay. And have you talked with him about the sentencing process in federal court? |
| Mr. Golger: | I have, Your Honor. |

*Id*. at 11. The Court then confirmed again:

| The Court: | Do you have any questions at this point as to what you're charged with in Count One, what the maximum penalties are, what rights you have, which ones you're giving up and which ones you aren't giving up? Any questions at this time? |
|---|---|
| The Defendant: | No. |

*Id*. at 20. Turning to the application of the applicability of the Sentencing Guidelines, the Court provided fulsome explanation of the sentencing process and applicability of the Sentencing Guidelines and ensured that Spear-Zuleta had discussed the sentencing process with Attorney Golger. *Id*. at 21-22. While the parties had agreed that Spear-Zuleta was a base offense level 20, *see* 3:18CR311, Doc. No. 172 (plea agreement) at 4, at the time of the change of plea Spear-Zuleta objected to the applicability of sentencing enhancements and the question was left open for further

development at the *Fatico* hearing. *See* 3:18CR311, Doc. No. 202 (change of plea transcript) at

23-24.

The Court made clear that the applicability of sentencing enhancements were an open

question, though the defendant would retain his appellate rights:

| | |
|---|---|
| The Court: | Do you understand that that's sort of left open for both sides to argue and for me to decide at sentencing? |
| The Defendant: | Yes. |
| The Court: | Okay. So what that means is we don't really have an agreement about the Guidelines and it's subject to argument by me and maybe fact finding by me. And then I'll determine the Guidelines and use the Guidelines as part of my considerations of sentencing you which, of course, as I said, you can appeal, as can the government. Do you understand that? |
| The Defendant: | Yes. |

*Id*. at 24.

As the Court made clear, beyond the maximum statutory penalty of which Spear-Zuleta

was certainly informed, there was no "true sentencing exposure" because, as the Court outlined,

that was a determination to be made based upon a variety of factors. The Court ensured Spear-

Zuleta comprehended this important detail:

| | |
|---|---|
| The Court: | I guess that kind of emphasizes what I said earlier: You have to decide today to plea guilty without knowing what your sentence is, because I don't know what it's going to be because I don't know enough about you, right? |
| The Defendant: | Yeah. |
| The Court: | Until I have all that information, I won't know what the sentence should be. So if later on the sentence is more severe than you might have hoped for or discussed with Attorney Golger, you can appeal the sentence and ask the upstairs court to look at what I did and correct me if I'm wrong, but you can't take back your guilty plea. That's a |

|                   | decision you make today and that's it. Do you understand that? |
|-------------------|---------------------------------------------------------------|
| The Defendant:    | Understood.                                                    |

*Id*. at 24. With a firm understanding that the applicable Guidelines range would be determined after further factual development, Spear-Zuleta entered a guilty plea and later received a within-Guidelines sentence (a sentence below the statutory maximum of 20 years' imprisonment). While Spear-Zuleta did appeal the Court's application of a two-point enhancement for theft of a controlled substance, he did not appeal the substantive reasonableness of his sentence. *See Spear-Zuleta*, 2022 WL 17347243.

The record belies any argument that Spear-Zuleta was not informed by counsel of his "true sentencing exposure." Def's Mot. at 7. The maximum penalty of 20 years imprisonment was crystal clear to Spear-Zuleta. He, while under oath, acknowledged to the Court that he discussed with Attorney Golger the maximum penalties associated with the offense, the applicability of the Sentencing Guidelines, and the then-contested potential enhancements (and potential reduction for acceptance of responsibility) to his offense level. *See* 3:18CR311, Doc. No. 352 (sentencing hearing transcript). *See also* 3:18CR311, Doc. No. 172 (plea agreement). The record also makes clear that the parties discussed the potential applicability of specific sentencing enhancement where the plea agreement left open those questions (and where he preserved his appellate rights), and where there would be argument over the applicable Guidelines enhancement at a *Fatico* hearing intended to resolve any factual questions. *See* 3:18CR311, Doc. No. 352 (sentencing hearing transcript) at 51-52.

Nothing in the record, or his motion, supports Spear-Zuleta's claim that his counsel was ineffective. Where Spear-Zuleta discussed with counsel the maximum statutory penalties and the applicability of the Sentencing Guidelines, confirmed by the Court at his change of plea, he fails

to satisfy either the *Strickland* performance or prejudice prongs.

### d. Failure to object to "unfair proceedings"

Spear-Zuleta's claim that he received ineffective assistance of counsel for failure to object to "unfair proceedings" similarly fails. *See* Def's Mot. at 9.

First, he fails to articulate which stage of the proceeding was "unfair," or which objection(s) his counsel should have asserted. In any event, Spear-Zuleta, at the *Fatico* hearing, made the objection himself:

| | |
|---|---|
| The Defendant: | Excuse me, Your Honor. I would like to be heard. I'm stating on record and for the record, *this is an unfair hearing*. This is not conducted in accordance with due process. I would like to speak to the specifics upon my denial of due process by being denied access to a law library at the facility I'm in. Also, I've had materials sent to me from family via mail. It got refused into the facility and still to this day, I have not had access to all of my evidence. |
| The Court: | Okay, sir. You put it on the record. |

CM/ECF 3:18CR311, Doc. No. 274 (*Fatico* hearing transcript) at 88 (emphasis added). To the extent that Spear-Zuleta sought a blanket objection to the fairness of the *Fatico* hearing, the record was preserved (though he did not advance on appeal, *see Spear-Zuleta*, 2022 WL 17347243, the "unfairness" of the proceedings).

Throughout the case, Attorneys Golger and Collins made various objections and preserved Spear-Zuleta's rights. Attorney Golger filed a motion to suppress evidence. CM/ECF 3:18CR311, Doc. Nos. 53. In negotiating the plea agreement with the Government, Attorney Golger objected to the application of certain sentencing enhancement and preserved the petitioner's appellate rights. CM/ECF 3:18CR311, Doc. No. 172 (plea agreement). During the change of plea, Attorney Golger objected to aspects of the factual basis for the offense. CM/ECF 3:18CR311, Doc. No. 172

(change of plea transcript) at 33 (Attorney Golger: "If Your Honor please, there are a number of items represented by the government that they would prove at trial which my client would disagree with ..."). *See also* CM/ECF 3:18CR311, Doc. No. 206-1 (Attorney Golger objections to PSR). Attorney Golger then, before being relieved, filed the first motion to withdraw Spear-Zuleta's guilty plea. CM/ECF 3:18CR311, Doc. No. 199.

Attorney Collins picked up the baton and filed an amended motion to withdraw the guilty plea and a second motion to withdraw the guilty plea. CM/ECF 3:18CR311, Doc. Nos. 230, 253. Attorney Collins further raised "various objections to the presentence probation officer's suggested guideline calculation," to be addressed at the contested *Fatico* hearing. CM/ECF 3:18CR311, Doc. No. 274 (*Fatico* hearing transcript) at 3. *See also* CM/ECF 3:18CR311, Doc. No. 303 (Defendant's sentencing memorandum). At the *Fatico* hearing, as described above, Attorney Collins tested the Government's evidence, cross-examined the only witness presented by the Government, and presented a police witness for the defense. *See* CM/ECF 3:18CR311, Doc. No. 274 (*Fatico* hearing transcript). Spear-Zuleta also took an opportunity at the *Fatico* hearing to lodge objections to the proceeding. CM/ECF 3:18CR311, Doc. No. 274 (*Fatico* hearing transcript) at 88.

At the sentencing hearing, Attorney Collins made certain objections to facts contained within the PSR, CM/ECF 3:18CR311, Doc. No. 352 (Sentencing hearing transcript) at 10, 32-33, and successfully received a *Fernandez* departure after his objection to any finding that the defendant be categorized a Criminal History Category VI. *Id*. at 98-99. Throughout the proceeding, Attorney Collins objected to the application of sentencing enhancements, contested facts advanced by the Government, and questioned Branham's credibility. *See id*. at 21-25, 36-40, 45, 47-56, 61-62, 71, 82-83. Attorney Collins's advocacy resulted in the Court denying the application of a two-level enhancement pursuant to U.S.S.G. § 3A1.1(b)(1) (vulnerable victim) and receipt (over the

Government's objection) of a two-level reduction pursuant to U.S.S.G § 3E1.1(a) for acceptance of responsibility. Spear-Zuleta was also twice afforded the opportunity to speak at his sentencing, including where he directly asked legal and factual questions of the Court. *Id*. at 101-03, 123-25.

The record is replete with instances where counsel raised objections to the proceedings at various stages, including Spear-Zuleta's own objection to "unfairness." Spear-Zuleta does not and cannot demonstrate a failure by counsel (whether Attorney Golger or Attorney Collins) to make appropriate objections, or to preserve claims for appellate review. He does not point to any specific objection that should have been made but was missed. His assertion fails to satisfy either *Strickland* prong and is without merit.

### e. *Coerced plea*

Finally, Spear-Zuleta claims for the first time that his guilty plea was "coerced by counsel," Attorney Golger, and was thus, involuntary. Def's Mot. at 8. He choses not to describe the manner by which he was coerced to plead guilty. *Id*.

To start, Spear-Zuleta's choice to plead guilty to Count One of the Second Superseding Indictment resulted in the Government's dismissal of Counts Two, Three, and Four, charges related to kidnapping and conspiracy. *See* CM/ECF 3:18CR311, Doc. No. 324. Counts Two and Three, violations of 18 U.S.C. §§ 1201(a)(1) & 2 (kidnapping), carried a maximum sentence of "imprisonment for any term of years, or of life …" 18 U.S.C. §§ 1201(a). By pleading guilty to Count One (interference with commerce by robbery), Spear-Zuleta received the benefit of the Government's agreement to dismiss Counts Two and Three (kidnapping), both of which carried potential life sentences. In effect, his guilty plea lessened his sentencing exposure from a maximum of life imprisonment to a maximum of 20 years' imprisonment. In his written plea agreement, Spear-Zuleta confirmed that his guilty plea was voluntary and "without threats, force, intimidation,

or coercion of any kind." CM/ECF 3:18CR311, Doc. No. 172 (plea agreement) at 6.

But Spear-Zuleta's own sworn statements to this Court, *see* CM/ECF 3:18CR311, Doc. No. 202 (change of plea transcript) at 4, contradict his new claim that his guilty plea was coerced. Spear-Zuleta was asked directly:

| | |
|---|---|
| The Court: | First, I want to know whether anybody is forcing you or threatening you or coercing you to change your plea to guilty, if that's what you want to do this afternoon. |
| The Defendant: | No. |

CM/ECF 3:18CR311, Doc. No. 274 (change of plea hearing transcript) at 38. Spear-Zuleta then confirmed he was acting freely:

| | |
|---|---|
| The Court: | I had just asked you, I think, the question: If you do change your plea to guilty, would you be doing so voluntarily, of your own free will, because you're guilty, and for no other reason? |
| The Defendant: | Yes. |

*Id*. at 39-40. The Court inquired directly of Attorney Golger whether there was any reason that Spear-Zuleta should not be allowed to plead guilty, and Attorney Golger replied, "If that's his choice, no." *Id*. at 41. Reinforcing Spear-Zuleta's testimony to the Court that his decision-making was free from coercion, Spear-Zuleta sought to confer with Attorney Golger during the proceedings, and asked to interrupt the Court's questioning to confer with individuals in the audience of the courtroom, which this Court allowed. *Id*. at 3, 39-40. Spear-Zuleta further took the initiative to independently ask his own questions of the Court:

| | |
|---|---|
| The Defendant: | I just like to speak up if any – you know, I just speak up for myself. |
| The Court: | That's fine. |

| The Defendant: | With anything in life, if I don't know, I would like to find out. |

*Id*. at 46. After Spear-Zuleta confirmed that he had no further questions (The Defendant: "No everything is understood."), he made clear that no one had forced him to sign the plea agreement:

| The Court: | And when you signed it, you had already read it; is that fair to say? |
| The Defendant: | Yes. |
| The Court: | Was anyone forcing you to sign it? |
| The Defendant: | No. |

*Id*. at 48-49. Based upon his sworn representations, the Court found that Spear-Zuleta entered into the plea "acting voluntarily, knowingly, and of his own free will." *Id*. at 49-50.

Nothing in his motion refutes his prior sworn statements or lends any support to his newly raised claim that he was "coerced by counsel." There is nothing in the record to support that Spear-Zuleta ever raised the serious claim of coercion by Attorney Golger to his subsequent counsel, Attorney Collins or Attorney Glasser. Instead, Spear-Zuleta inexplicably kept pocketed the unsubstantiated coercion for over four years, and well after Attorney Golger was relieved from the case. This timeline casts serious doubts on the veracity of his coercion claim. To the contrary, his prior sworn statements carry a strong presumption of verity. *See Maher*, 108 F.3d at 1530. Spear-Zuleta should be held to the sworn statements he made to this Court during his change of plea.

## CONCLUSION

For the reasons set forth above, the Petitioner's *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is meritless and should be denied.  Because he is entitled to no relief and his claims are insufficient as a matter of law, a hearing is unnecessary.

Respectfully Submitted,

VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

\_\_*/s/*_____
PATRICK J. DOHERTY
ASSISTANT U.S. ATTORNEY
Federal Bar No. PHV10400
1000 Lafayette Blvd., 10th Fl.
Bridgeport, Connecticut 06604

## CERTIFICATE OF SERVICE

This is to certify that on January 25, 2024, a copy of the foregoing Government's Motion was filed electronically and served by first-class United States mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

\_\_*/s/*_____
PATRICK J. DOHERTY
ASSISTANT U.S. ATTORNEY